IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CATHY A. UNDERWOOD                                                         PLAINTIFF

v.                              Civil No. 11-3044

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                             DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Cathy Underwood, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental insurance benefits ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on March 25, 2009, alleging an onset date of February 1, 2009, due to coronary artery disease, chronic pain, insulin dependent diabetes with diabetic retinopathy, radiating back pain, knee pain, chronic obstructive pulmonary disease ("COPD"), and obesity. Tr. 128-134, 216, 237-243, 244-250, 260-264, 269-274, 276. Her applications were initially denied and that denial was upheld upon reconsideration. Tr. 76-82. Plaintiff then made a request for a hearing by an Administrative Law Judge ("ALJ"). An administrative hearing was held March 16, 2010. Tr. 24-71. Plaintiff was present and represented by counsel.

At this time, Plaintiff was 57 years of age and possessed Bachelor of Science Degree in Nursing. Tr. 28, 223. She had past relevant work ("PRW") experience as a retail sales clerk, a receptionist, an advice nurse, and a floor RN. Tr. 28-36, 177-186, 199-205, 217-218, 279.

On May 25, 2010, the ALJ found that Plaintiff's degenerative disk and joint disease of the lumbar spine with mild right SI radiculopathy, aortic stenosis status post aortic valve replacement, coronary artery disease, osteoarthritis of the right knee, diabetes mellitus with retinopathy, COPD, obesity, and dysthymia were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 11-13. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work that does not involve climbing, kneeling, crouching, crawling, exposure to temperature extremes and humidity, driving, concentrated exposure to fumes, odors, gases, and poor ventilation; and exposure to hazards such as unprotected heights and moving machinery and only occasional balancing and stooping. Further, the ALJ limited Plaintiff to work where the interpersonal contact is routine and superficial, the complexity of the tasks is learned by experience with several variables and judgment within limits, and where the supervision required is little for routine tasks but detailed for non-routine tasks. Tr. 13-18. With the assistance of a vocational expert, the ALJ found plaintiff could perform her PRW as a receptionist. Tr. 18.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on May 25, 2011. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 8, 9.

The Court has reviewed the entire transcript and appeal briefs filed in relation to this case. We find that the facts and arguments have been sufficiently laid out in the ALJ's opinion and the appeal briefs filed by the parties. Said facts and arguments are adopted by the undersigned and will be repeated only to the extent necessary.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of

3

impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff contends the ALJ erred in concluding that Plaintiff was not disabled because: 1) the ALJ erred in his analysis and credibility findings in regard to Plaintiff's subjective complaints of pain by using the lack of objective medical evidence and Plaintiff's continued employment after her alleged onset date to discredited her complaints; 2) the ALJ failed to conclude that her condition met or medically equaled §§ 1.02 and 1.04; 3) the ALJ failed to consider her obesity in combination with her other impairments; and, 4) the ALJ failed to include Plaintiff's concentration and pace limitations in her RFC assessment.

#### A. Subjective Complaints and Credibility Analysis:

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.429. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). These factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). Furthermore, an ALJ's credibility determination is generally entitled to deference. *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007). As long

as the ALJ properly applies these five factors and gives several valid reasons for his or her finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

Plaintiff contends that the ALJ's credibility determination was based solely on the fact that the objective medical evidence did not support her subjective complaints and that she continued to work after her onset date. After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors. In concluding that Plaintiff's subjective complaints were not entirely credible, the ALJ identified the following as factors diminishing Plaintiff's credibility: 1) a lack of significant limitations imposed by Plaintiff's treating physicians; 2) Plaintiff's substantial gainful activity after her onset date and until her open heart surgery in May 2009; 3) Plaintiff's return to part-time, light work within three months of her heart surgery working approximately 30 hours per week; 4) the conservative nature of Plaintiff's treatment for her chronic pain, depression, and diabetes; 5) the fact that her doctors consistently encouraged her to exercise; and 6) Plaintiff's reported activities. Perhaps the most harmful, however, is the fact that Plaintiff continued to work after her alleged onset date of February 1, 2009. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir. 2001). Between February 1, 2009 and May 7, 2009, the date of Plaintiff's open heart surgery, she worked 32 to 36 hours per week[1], in spite of her alleged pain and impairments. Tr. 39-40. In May 2009, Plaintiff underwent aortic valve replacement surgery, returning to work in September

---

[1] The ALJ concluded that her earnings during this period of time rose to the level of substantial gainful activity, while her earnings after her return to work were just below substantial gainful activity levels. Tr. 17.

after only three months of recovery and working 25 to 30 hours per week. Tr. 39. Further, at the time of the hearing, she continued to work at least one day per week.

Evidence indicates that Plaintiff was also able to participate in a cardiopulmonary rehabilitation program (involving exercise), care for her personal hygiene, prepare simple meals, make beds, dust, wash and fold clothes, scrapbook, go outside daily, walk, drive, go out alone, shop for groceries and miscellaneous items, sit and read, watch television, do crafts, talk on the phone, and garden (flowers). Tr. 187-195, 251-258, 640.

A comparison of Plaintiff's March 2010 lumbar MRI with her February 2009 MRI revealed no progression in her DDD, and Plaintiff was treated only conservatively for this impairment. Tr. 688-690. Similarly, she received only conservative treatment for her knee impairment. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with Plaintiff's allegations of disabling pain). And, her last cardiac follow-up appointment with Dr. Warr in August 2009 revealed an increased energy level, an 18 pound weight loss, and a normal recovery following open heart surgery. Tr. 582-584. A repeat echocardiogram also showed normal left ventricular function with paradoxic septal motion, mild left atrial enlargement, mild mitral regurgitation, trace aortic regurgitation, trace tricuspid regurgitation, and an ejection fraction rate of 55 to 60%. Tr. 585-586. Records concerning her diabetes also indicate that her blood sugar levels were well controlled via medication and insulin, with evidence of only a few abnormal readings. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Plaintiff's COPD was also noted to result in only a mild restrictive ventilator defect. Tr. 433, 567. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Further, although Plaintiff did suffer from a mental impairment, she failed to seek out formal mental health treatment and received only conservative treatment for her condition with no evidence of hospitalizations or episodes

of decompensation. We note that the lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

Accordingly, we conclude that the inconsistencies between Plaintiff's subjective complaints, her reported activities, and the objective medical evidence diminished her credibility. *See Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999) (finding activities such as driving his children to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain). The ALJ's credibility determination is supported by substantial evidence.

### B. Listings 1.02 and 1.04:

Plaintiff has the burden of proof to establish that her impairments meet or equal a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990) (superseded by statute on other grounds). In order to meet a listing, the impairment must meet all of the listing specified criteria. *Id.* at 530. "An impairment that manifests only some of these criteria, no matter how severely, does not qualify." *Id.*

Medical equivalence is defined further as requiring "medical findings . . . at least equal in severity and duration to the listed findings." 20 C. F. R. §§404.1526(a), 416.926(a). A discussion of the Administration's position on medical equivalence is included in SSR §96-6p (1996). Medical equivalence to a listing is determined by the Administration after review of the record by an agency medical consultant. 20 C. F. R. §§404.1526(b), 416.926(b). A comparison is made between the symptoms, signs, and laboratory findings relative to the claimant's impairment or impairments, and the medical criteria of a particular listing. 20 C. F. R. §§404.1526(a), 416.926(a). The Social Security Act provides that an individual will be determined to be under a disability only if his or her "physical or mental impairment(s) is of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering [the individual's] age, education, and work experience, engage in any kind of substantial gainful work." 42 U. S. C. §423(d)(2)(A).

The question is here whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). "The fact that the ALJ d[oes] not elaborate on this conclusion does not require reversal [where] the record supports h[is] overall conclusion." *Id*.

To meet the requirements of Listing 1.02, the following criteria are required: a gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s), with involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, as defined in 1.00B2b; or involvement of one major peripheral joints in each upper extremity (i.e.,shoulder, elbow, or wrist-hand), resulting in the inability to perform fine and gross movements effectively, as defined in 1.00B2c. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. In order to prove an inability to ambulate effectively as defined in Listing 1.00(B)(2)(b), Plaintiff must show that she is incapable of maintaining a reasonable walking pace over a sufficient distance so that she can independently initiate and carry out activities of daily living. *See* 20 C.F.R. pt. 404, subpt. P, app. 1,§§ 1.00(B)(2)(b), 1.02(A).

Further, Listing 1.04 requires evidence "of nerve root compression characterized by a neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

The ALJ reviewed the evidence and concluded that her spinal disorder did not meet or equal the requirements of Listing 1.02 in that there was no evidence in the record that the Plaintiff was unable to ambulate effectively. Further, he determined that the medical records did not demonstrate nerve root or spinal

cord compromise with nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication as required in Listings 1.04A, B, and C. After reviewing the evidence, we agree. For the reasons enumerated above and below, we cannot say that Plaintiff's condition met or equaled a listed impairment. Physical exams revealed no significant range of motion limitations, a normal gait and station, and normal strength. Tr. 328-332. Accordingly, we find that the ALJ's determination is supported by substantial evidence.

### C.   Obesity:

SSR 02-1p provides guidance for evaluating obesity. It recognizes that obesity can cause limitation of function, but acknowledges that the functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have obesity related limitations in any of the exertional functions such as *sitting,* standing, walking, lifting, carrying, pushing, and pulling. It may also affect a person's ability to perform postural functions, such as climbing, balance, stooping, and crouching. SSR 02-1p further explains that the combined effects of obesity with other impairments may be greater than might be expected without obesity providing "[f]or example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."

There is some evidence in the record to show that plaintiff was obese, but we can find no evidence to indicate that Plaintiff's obesity prevented her from performing work-related activities. None of her treating doctors suggested her weight imposed any additional work-related limitations, and she did not testify that her weight imposed additional restrictions. *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003). Further, records indicate that Plaintiff's weight dropped from 200 in April 2008 to 186 in 2009, and that Plaintiff's obesity has not prevented her from working, albeit part-time, throughout the relevant time period.

After reviewing the evidence, the ALJ noted that there was no evidence to indicate that the combined effects of Plaintiff's medically determinable impairments and her obesity were greater than each of the

9

impairment's separate effects. We agree. And, we find that the impact of Plaintiff's obesity was taken into consideration by the ALJ's conclusion that Plaintiff could perform only a limited range of sedentary work.

        D.      <u>**RFC Assessment:**</u>

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

Plaintiff contends that the ALJ erred by failing to include limitations regarding her decreased concentration, persistence, and pace in his RFC assessment. She correctly points out that Dr. Bunting concluded that her capacity to complete work-like tasks within an acceptable time frame *could* be adversely effected by her pain levels and that her cognitive abilities *may* be diminish through the day as her pain increased. Tr. 640-641. However, as previously noted, Plaintiff failed to seek out formal mental health treatment, although she consistently sought out treatment for her physical problems. And, she reported no

10

difficulty following written or oral instructions, handling changes in routine, handling stress, getting along with others, or getting along with authority figures. Tr. 187-195, 251-258. Further, Plaintiff reported the ability to go out alone, shop, go out to eat, play games on her computer, watch television, pay bills, count change, handle a savings account, and use a checkbook/money orders. We find that the ability to perform these activities is inconsistent with her allegations of significant concentration and pace limitations.

From a physical perspective, Plaintiff's doctors also limited her to lifting no more than 10 pounds, but continued to recommend that she exercise and lose weight. Tr. 450-451. Plaintiff was able to participate in a cardiopulmonary rehabilitation program, work at least one day per week, and perform a variety of household chores evidencing her ability to perform at least the limited range of sedentary work identified by the ALJ. Accordingly, we find that the ALJ considered the medical assessments of the examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and the medical records as he was required to do. And, the RFC determination is supported by substantial evidence.

### IV.   **Conclusion:**

Accordingly, having carefully reviewed the record, and for the reasons enumerated above and in the Defendant's appeal brief, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 30th day of August 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)